**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:

ANTHONY LA RUSSO,

                     Debtor.

Chapter 7
Case No.  05-20771 (RG)

- - - - - - - - - - - - - - - - - - - - - - - - - -X

NANCY ISAACSON, Chapter 7
Trustee,

                    Plaintiff,

v.

DANA STEFANELLI,

                    Defendant.

Adversary Proceeding
No. 05-2731 (RTL)

- - - - - - - - - - - - - - - - - - - - - - - - - -X

**OPINION**

**APPEARANCES:**

Nancy Isaacson, Esq.
Laura Eve Quinn, Esq.
Goldstein Isaacson, PC
(Attorneys for the Chapter 7 Trustee, Nancy Isaacson)

John J. Piserchia, Esq.
(Attorney for the Defendant, Dana Stefanelli)

**RAYMOND T. LYONS, U.S.B.J.**

**INTRODUCTION**

      The Trustee sued to recover the balance due on a promissory note payable to the Debtor.

Defendant made the note for the purchase price of Debtor's chiropractic practice.  Defendant

asserted that she is excused from further performance on the note because (i) the Debtor

1

misrepresented that he had never practiced under another name, (ii) failed to inform her that he

was being investigated for insurance fraud, and (iii) illegally paid for referral patients.  After

trial, the court concludes that the Debtor's failure to fully inform the Defendant about the

pending insurance investigation is equivalent to a material misrepresentation; however, the

Defendant failed to offer any evidence or method for the court to quantify her damages.

Furthermore, rescission is not an appropriate remedy where the chiropractic practice cannot be

returned to the Debtor.  Therefore, the Trustee is entitled to recover the balance due on the note.

## JURISDICTION

This court has jurisdiction of this adversary proceeding under 28 U.S.C. § 1334(b), 28

U.S.C. § 157(a), and the Standing Order of Reference by the United States District Court for the

District of New Jersey dated July 23, 1984, referring all proceedings related to a case under title

11 of the United States Code to the bankruptcy court.

The court must determine if this is a core or non-core proceeding.  28 U.S.C. § 157(b)(3).

A core proceeding must be "arising under" or "arising in" title 11.  *See id.* § 157(b)(1).  To be

"arising under" or "arising in" title 11, a proceeding must substantively invoke title 11 or have

no existence independent of the bankruptcy case.  *See Stoe v. Flaherty*, 436 F.3d 209, 216 (3d

Cir. 2006).  28 U.S.C. § 157(b)(2) sets forth a non-exhaustive list of core proceedings.

Proceedings only "related to" a case under title 11 cannot be classified as core.  *Id.* at 217.

The Trustee argues this is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (E).

Section 157(b)(2)(E) classifies "orders to turn over property of the estate" as core proceedings.

28 U.S.C. § 157(b)(2)(E).  Subsection (b) of 11 U.S.C. § 542 (styled "Turnover of property of

the estate") provides that "an entity that owes a debt . . . payable on demand . . . shall pay such

debts to . . . the trustee." 11 U.S.C. § 542(b). The Trustee asserts that her suit to collect money

owed by Dr. Stefanelli to Dr. La Russo is a turnover proceeding. The Trustee's attempt to style

this case as a turnover proceeding mischaracterizes the issue at hand. Actions to turn over

property of the estate are "limited to property in the actual or constructive possession of the

bankruptcy court." *Beard v. Braunstein*, 914 F.2d 434, 444 (3d Cir. 1990). Thus, there exists a

difference "between a "core" turnover proceeding and a "non-core" state-law contract action."

*Id.* "[A] garden variety contract claim" cannot be considered a core proceeding.[1] *Id.* Such a

claim can, at most, be found to be "related to" the bankruptcy.

In this case, the dispute is over the Defendant's failure to pay the balance of a note due to

the Debtor. However, the Defendant claims she is excused from making this payment because of

fraud committed by the Debtor. Such a proceeding can be characterized as "nothing more than a

traditional state law cause of action that exists independently" from the Debtor's bankruptcy.

*Son v. Coal Equity, Inc. (In re Centennial Coal, Inc.)*, 278 B.R. 54, 58 (Bankr. D. Del. 2002).

Therefore, it is not a core proceeding.

The court has limited jurisdiction to hear non-core proceedings. Pursuant to § 157(c)(1),

the court shall "submit proposed findings of fact and conclusions of law to the district court, and

any final order or judgment shall be entered by the district judge after considering the

bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters

---

[1] The Third Circuit reached this conclusion by citing *In re Lehigh & Hudson River Railway Co.*, 468 F.2d 430, 433 (2d Cir. 1972), which stated:

> While a chose in action is property of the estate, and the bankruptcy court can determine who owns it, "the bankruptcy court does not have summary jurisdiction to *enforce* a chose in action against the bankrupt's obligor, even when the bankrupt's rights seem clear."

*Beard*, 914 F.2d at 444 (quoting *Lehigh & Hudson River Ry. Co.*, 468 F.2d at 433).

to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).  However, with

the consent of all parties, a bankruptcy court may issue final judgment subject to appeal to the

district court.  *Id.* § 157(c)(2).  The Trustee's allegation that this is a core proceeding can be

interpreted as the Trustee consenting to this court's entering final judgment.  The Defendant, in

her answer, admitted this allegation.  Therefore, while this is a non-core proceeding, the parties

have consented to this court entering final judgment.

**FINDINGS OF FACT AND PROCEDURAL HISTORY**

Anthony La Russo filed a voluntary petition under chapter 7 of the Bankruptcy Code on

April 5, 2005.  Nancy Isaacson is the trustee in his case.  The Debtor is a chiropractor.  Among

his assets is a promissory note made by the Defendant, Dr. Dana Stefanelli, relating to her

purchase of Dr. La Russo's chiropractic practice.  The Trustee demanded payment from Dr.

Stefanelli for the balance due on the note.

On April 26, 2003, Drs. La Russo and Stefanelli signed a written contract for the sale of

his chiropractic practice in Newark.  The assets included approximately fifty active patients

needing continuing treatment, equipment, telephone numbers, and the lease of the professional

office.  The purchase price was $70,000.  Dr. Stefanelli paid $15,000 down and signed a note for

$55,000, payable $2,000 per month without interest starting September 1, 2003.  Following

closing on May 31, 2003, the first five payments through January 2004 were made, but thereafter

Dr. Stefanelli made no further payments.

Her reason for ceasing payments was that the chiropractic practice did not turn out to be

profitable for her.  Several months after she took over the practice, the monthly revenue

dwindled to the point where she could not meet her payroll, rent, and other expenses, let alone

4

make a profit.  She decided to close the office in the beginning of 2004.  No effort was made to return the practice, including patients, the lease, and equipment, to Dr. La Russo.

The contract has a representation that Dr. La Russo has not used any other business name in the last three years.  However, Dr. La Russo had operated as Academy Chiropractic Center, Inc. but ceased using that name in October 2002.  Thereafter, he incorporated Rehabilitation Therapy Corp. and was practicing under that name at the time of the contract.  Dr. La Russo testified that he was prompted to change the name of his practice because of the State Farm investigation that began in May 2001.  Dr. La Russo explained that he changed the name in order to distinguish the files involved in the investigation from the files continuing on.  He also stated that he simply wanted a different name.  Therefore, the representation in the contract was not true.

At the time the contract was signed, Dr. La Russo had some unpaid claims for his treatment of patients injured in automobile accidents who were insured by State Farm Insurance Company.  When asked at trial about these unpaid claims and State Farm's investigation, Dr. La Russo testified that he told Dr. Stefanelli "everything".  Dr. La Russo stated that he informed Dr. Stefanelli that State Farm had raised an investigation against him surrounding billings and was withholding payment while it investigated the patient files.  He also testified that he told Dr. Stefanelli that the investigation might or might not affect her getting paid once she acquired the State Farm files in the sale of the business.

Dr. La Russo did not tell Dr. Stefanelli that State Farm was investigating him for fraud.  Dr. La Russo testified that at the time of the sale of the practice his understanding of the status of the investigation was that State Farm was gathering evidence and at some future point would

want answers.  Dr. La Russo denied knowing the specific nature of the issues being investigated; however, he did indicate that after meeting with a State Farm investigator he retained counsel.

Dr. Stefanelli's testimony about the discussions regarding State Farm differs significantly.  Dr. Stefanelli testified that Dr. La Russo did not disclose that he was under investigation and that the only conversation she had with Dr. La Russo regarding State Farm was that a problem between Dr. La Russo and State Farm with billing had occurred.

Dr. Stefanelli did not contact State Farm prior to closing to seek any further information from them.  After the closing, State Farm filed a complaint against Dr. La Russo in the Superior Court of New Jersey on September 4, 2003, alleging that he billed for chiropractic services that were not actually rendered and submitted fictitious patient records in violation of the New Jersey Insurance Fraud Prevention Act.  Dr. La Russo settled the suit with State Farm by agreeing to pay $65,000.  The New Jersey Attorney General initiated a criminal proceeding relating to the State Farm allegations that was, likewise, resolved by Dr. La Russo agreeing to pay a $15,000 fine.

After she purchased Dr. La Russo's practice, Dr. Stefanelli treated ten to fifteen patients insured by State Farm who had been treated by Dr. La Russo.  State Farm wrote to Dr. Stefanelli requesting access to her patient records and advising her that payment on the claims would be delayed pending investigation.  She never received payment on those claims, which total approximately $15,000; however, she has yet to receive notice that State Farm has disallowed the claims.  Dr. Stefanelli hired an attorney to arbitrate a few of the State Farm claims without success.  Although Dr. Stefanelli performed the treatment on patients who had valid insurance coverage with State Farm and she submitted valid claims, she has received no explanation as to

why State Farm has not paid her or why her arbitration proceedings were not successful.

An investigator from State Farm contacted Dr. Stefanelli and asked to inspect her files on patients who had previously been treated by Dr. La Russo. Dr. Stefanelli met with the investigator and showed him her files. She testified, over objection, that the investigator told her Dr. La Russo was being investigated for fraudulent billing practices.

Dr. Stefanelli and her office manager testified, over objection, that two or three men, identified only by their first names, came into the office and offered to refer patients to Dr. Stefanelli if she would agree to pay the men. Each man indicated that he had referred patients to Dr. La Russo in exchange for payment. Dr. Stefanelli refused to do business with the men. Dr. La Russo testified that he never paid anyone to refer patients to him and there was no other evidence of his having used "runners".

Dr. Stefanelli tried to meet with an attorney who was a tenant in the same building in Newark and asked the attorney to refer patients to her. The attorney told Dr. Stefanelli that she would not refer any of her clients to Dr. Stefanelli because of Dr. La Russo's poor reputation.

The trustee in Dr. La Russo's bankruptcy case instituted this adversary proceeding against Dr. Stefanelli on September 27, 2005. The Trustee argues the unpaid balance due on the note, plus interest and late fees, are property of the estate pursuant to 11 U.S.C. § 541(a)(1).[2] Thus, the Trustee seeks to have Dr. Stefanelli turn over such funds so that they can be distributed for the benefit of Dr. La Russo's creditors. Dr. Stefanelli opposes such action and argues her agreement with Dr. La Russo was based on fraud and misrepresentation. Dr. Stefanelli claims to have rescinded the contract and believes she is excused from liability on the note.

---

[2] Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

## **DISCUSSION**

I.    EVIDENTIARY ISSUES

Dr. Stefanelli offered testimony to support her allegations of Dr. La Russo's fraud and

misrepresentation.  Dr. Stefanelli testified as to conversations she had with the alleged illegal

runners she claimed worked for Dr. La Russo who tried to elicit business from her.  She also

testified about conversations she had with the State Farm investigator about the fraud

investigation of Dr. La Russo, as well as other professionals regarding Dr. La Russo's reputation.

The Trustee objected to all of this testimony as hearsay.  The court allowed Dr. Stefanelli to

testify about all of these conversations and reserved decision on the admissibility of the

testimony.

"Hearsay is a statement, other than one made by the declarant while testifying at trial or

hearing, offered in evidence to prove the truth of the matter asserted."  FED. R. EVID. 801(c).

Generally, hearsay is inadmissible unless an exception to the hearsay rules applies.  FED. R.

EVID. 802.  The reason for this exclusionary rule is that hearsay is inherently unreliable.[3]  It is

well established that "[t]he primary justification for the exclusion of hearsay is the lack of any

opportunity for the adversary to cross-examine the absent declarant whose out-of-court statement

is introduced into evidence."  *Anderson v. United States*, 417 U.S. 211, 220 (1974).

A.    Testimony Regarding Illegal Runners

Dr. Stefanelli's testimony regarding her conversations with the runners who allegedly

worked for Dr. La Russo is offered to prove that Dr. La Russo committed fraud by failing to

---

[3] Traditionally, there have been four risks associated with the use of hearsay testimony:
defects in perception, defective memory, defective narration, and lack of veracity.  30 CHARLES
ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 6324
(1997).

disclose his use of illegal runners in his practice.  Dr. La Russo denies this.  Dr. Stefanelli is

offering the out-of-court statements of these individuals to prove Dr. La Russo used illegal

runners.  Therefore, this testimony is not admissible unless it does not meet the definition of

hearsay or falls under an exception to the hearsay rule.[4]

Dr. Stefanelli argues the testimony is admissible non-hearsay under Federal Rule of

Evidence 801(d)(2)(E).  This rule provides that a statement is not hearsay if it: (1) is offered

against a party and (2) is "a statement by a coconspirator of a party during the course and in

furtherance of the conspiracy . . . ."  FED. R. EVID. 801(d)(2)(E).  This exception "applies only to

declarations made while the conspiracy charged was still in progress . . . ."[5]  *Anderson*, 417 U.S.

at 218.

Dr. Stefanelli's argument suffers from a fatal flaw – she attempts to apply the exception

when the only evidence of a conspiracy presented to the court is her hearsay testimony.  No other

evidence was presented to prove there was a conspiracy or that Dr. La Russo and the runners

---

[4] This testimony involves multiple levels of hearsay.  Not only was Dr. Stefanelli testifying as to what the illegal runners said, but she was also testifying as to what the illegal runners alleged Dr. La Russo said to them.  When hearsay within hearsay arises, Federal Rule of Evidence 805 governs.  This rule states: "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules."  FED. R. EVID. 805.  In this case, the court has found the first level of hearsay (Dr. Stefanelli's testimony about what the runners said) is inadmissible.  Therefore, it unnecessary to evaluate the admissibility of the second level of hearsay.

[5] As the Court in *Anderson* explained:

> The rationale for both the hearsay-conspiracy exception and its
> limitations is the notion that conspirators are partners in crime. . . . As
> such, the law deems them agents of one another. And just as the
> declarations of an agent bind the principal only when the agent acts
> within the scope of his authority, so the declaration of a conspirator must
> be made in furtherance of the conspiracy charged in order to be
> admissible against his partner.

*Anderson*, 417 U.S. at 218 n.6 (internal citations omitted).

were coconspirators.  Thus, no conspiracy has been established.  Furthermore, if the runners were trying to elicit business from Dr. Stefanelli this would not be in the course or in furtherance of any conspiracy between the runners and Dr. La Russo.  Instead, it would be a new potential conspiracy between the runners and Dr. Stefanelli.  Thus, the hearsay-conspiracy exception is not applicable in this case.

By refusing to admit Dr. Stefanelli's hearsay testimony, the court is furthering the policy of keeping unreliable testimony out of evidence.  Dr. Stefanelli could have called the runners to testify and given Dr. La Russo the opportunity to cross-examine them.  Dr. Stefanelli failed to make any attempt to do this and instead relied on her own recollections of the conversations to prove that Dr. La Russo used illegal runners.[6]  This is not sufficient or admissible.

B.    Testimony Regarding Conversations with State Farm Investigator

Dr. Stefanelli's testimony regarding her conversations with the State Farm investigator and what he told her about the fraud investigation of Dr. La Russo is inadmissible.  Dr. Stefanelli asserts that Dr. La Russo committed fraud by not disclosing to her that his practice was under investigation for fraud.  Dr. Stefanelli is offering the investigator's out-of-court statements to prove Dr. La Russo was under investigation for fraud.  Dr. Stefanelli's testimony is inadmissible hearsay, and no exception to the hearsay rule applies.  Nevertheless, the complaint filed by State Farm alleging insurance fraud was admitted into evidence without objection.  There is no dispute that Dr. La Russo was being investigated and sued for insurance fraud.

C.    Testimony Regarding Others Conversations About Dr. La Russo

Dr. Stefanelli also testified about conversations she had with other professionals;

---

[6] The same rationale applies to the other testimony about the State Farm investigator and other professionals discussed below.

10

however, the only specific example she could recall was one conversation with an unidentified attorney.  Dr. Stefanelli stated that she approached the attorney in hopes of scheduling a lunch in order to network and gain referrals; however, the attorney refused.  Dr. Stefanelli indicated the attorney believed Dr. Stefanelli was associated with Dr. La Russo and did not want to do business with Dr. Stefanelli because of Dr. La Russo's bad reputation.  Dr. Stefanelli was unable to recall the specifics of the conversation.

These statements are inadmissible.  Dr. Stefanelli asserts that Dr. La Russo committed fraud by failing to disclose his use of runners and that he was under investigation for fraud.  Dr. Stefanelli is offering the attorney's out-of-court statements about Dr. La Russo's reputation to support these allegations.  Therefore, this testimony is hearsay.

One could argue this testimony falls within the Federal Rule of Evidence 803(21) hearsay exception.  This exception allows for the admission of evidence as to the "[r]eputation of a person's character among associates or in the community."  FED. R. EVID. 803(21).  However, the use of this exception is limited.  It works in conjunction with Federal Rules of Evidence 405 and 608; thus, it applies only when character is at issue.  Here, the testimony about Dr. La Russo's reputation is not being offered to establish a character trait, attack the credibility of Dr. La Russo as a witness, or any other character-related purpose.  It is being offered to support Dr. Stefanelli's allegations of Dr. La Russo's fraudulent conduct.  Thus, Rule 803(21) is not applicable.

Once again, Dr. Stefanelli's testimony suffers from a lack of reliability.  Dr. Stefanelli is unable to identity exactly who the declarant was or exactly what she said.  By finding such testimony inadmissible, the court is furthering the policies that underlie the hearsay rule.

11

II.    CONCLUSIONS OF LAW

A.    Liability on the Note

In order to determine the issues in this case, it is necessary to establish whether Dr.

Stefanelli is liable on the note.  A note is a negotiable instrument that is, by definition, a promise.

*See* N.J. STAT. ANN. § 12A:3-104(e) (West 2008).[7]  A promise is defined as "a written

undertaking to pay money signed by the person undertaking to pay." *Id.* § 12A:3-103(9).  The

person undertaking to pay a note is called the maker. *Id.* § 12A:3-103(5).  Section 12A:3-412

discusses the obligations of an issuer of a note and indicates the issuer "is obliged to pay the

instrument according to its terms at the time it was issued . . . ." *Id.* § 12A:3-412.  "The

obligation is owed to a person entitled to enforce the instrument . . . ." *Id.*  A person entitled to

enforce is the holder of the instrument.  *Id.* § 12A:3-301.  A holder "means the person in

possession if the instrument is payable to bearer or, in the case of an instrument payable to an

identified person, if the identified person is in possession." *Id.* § 12A:1-201(20).[8]

Dr. Stefanelli argues that in order to prove that she as the maker of the note is liable, the

Trustee must prove that Dr. La Russo complied with the contract.  Dr. Stefanelli claims this

burden has not been satisfied because the Trustee is unable to prove all of the representations

---

[7] New Jersey has adopted the Uniform Commercial Code to govern commercial
transactions.  N.J. STAT. ANN.  §§ 12A:1-101 to 12A:9-709 (West 2008).  Title 12A, chapter 3 of
New Jersey Statutes Annotated applies in this case because it specifically governs negotiable
instruments.  *See Id.* § 12A:3-102(a).

[8] Dr. La Russo was a person entitled to enforce the note because it was payable to him
and he was in possession of the note.  In bankruptcy, the trustee steps into the shoes of the
debtor.  *See Furness v. Wright Med. Tech., Inc. (In re Mercurio)*, 402 F.3d 62, 66 (1st Cir. 2005)
("The Trustee stands in the debtor's shoes . . . ."); *Stern v. Boothe (In re Cont'l Broker-Dealer
Corp.)*, 368 B.R. 109, 111 n.5 (Bankr. E.D.N.Y. 2007) ("The Trustee is the legal representative
of the bankruptcy estate. As such he steps into the shoes of the Debtor.").  Therefore, since Dr.
La Russo was a person entitled to enforce, the Trustee is also a person entitled to enforce.

made by Dr. La Russo to Dr. Stefanelli were true.  However, Dr. Stefanelli's argument misapplies the law.

As section 12A:3-412 makes clear, a maker is obligated to pay a note.[9]  The Trustee's production of the note, coupled with the evidence that Dr. Stefanelli made a partial payment on the note and that a balance is still due, is sufficient to establish Dr. Stefanelli's liability.  *See Ruane v. Jancsics*, 2001 Mass. App. Div. 103, 104 (Mass. App. Div. 2001) ("Once the signature [of the maker] is admitted and the note is produced, the holder is entitled to payment, unless the defendant proves a defense of, inter alia, fraud or duress.").  Thus, Dr. Stefanelli is liable on the note to the Trustee unless she is able to establish a defense, such as fraud.  The burden of proof for establishing a defense falls on Dr. Stefanelli.  *Stochastic Decisions, Inc. v. DiDomenico*, 565 A.2d 1133, 1137 (N.J. Super. Ct. App. Div. 1989) ( "The party asserting a fraud bears the burden of proving that fraud.").

B.    Defenses

Dr. La Russo, as an original party to the note, is not a holder in due course.[10]  Since the bankruptcy trustee steps into the shoes of the debtor, the Trustee in this case is not a holder in due course.[11]  Therefore, Dr. Stefanelli may assert both real[12] and personal[13] defenses against the

---

[9] "The contract liability of the issuer (often called a "maker") of a note is as easy to understand as the words 'I promise to pay . . . .' " JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 13-6 (5th ed. 2000).

[10] *See* N.J. STAT. ANN. § 12A:3-305, c.2 (West 2008) ("In most cases the holder-in-due-course doctrine is irrelevant if defenses are being asserted against the payee of the instrument . . . ."); *Id.* § 12A:3-302, c.4 ("The payee of an instrument can be a holder in due course, but use of the holder-in-due-course doctrine by the payee of an instrument is not a normal situation.").

[11] *See Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 356 (3d Cir. 2001) (internal citations omitted) ("Given these provisions, we have held that in actions brought by the trustee as successor to the debtor's interest under section 541, the trustee stands in

Trustee.

      1.    *Fraud*

As discussed above, section 12A:3-305 specifically allows for the chapter 3 defenses and

common law contract defenses to be asserted against a party who is not a holder in due course.

"The most prevalent common law defenses are fraud, misrepresentation, or mistake in the

issuance of the instrument."  N.J. STAT. ANN. § 12A:3-305 c.2 (West 2008).

Fraud must be proved by clear and convincing evidence, *see Weil v. Express Container

Corp.*, 824 A.2d 174, 182 (N.J. Super. Ct. App. Div. 2003); *Albright v. Burns*, 503 A.2d 386, 391

(N.J. Super. Ct. App. Div. 1986), with the burden of proof falling on the party asserting the

fraud.  *Stochastic Decisions, Inc.*, 565 A.2d at 1137.  "Depending on the remedy sought, an

action for fraud may be either legal or equitable in nature."  *Jewish Ctr. of Sussex County v.

Whale*, 432 A.2d 521, 524 (N.J. 1981).  In order to establish legal fraud, the party must show:

"(1) a material representation by the defendant of a presently existing or past fact; (2) knowledge

or belief by the defendant of its falsity; (3) an intent that the plaintiff rely upon it; (4) reasonable

reliance by the plaintiff; and (5) resulting damage to the plaintiff."  *Weil*, 824 A.2d at 182.  "The

_____

the shoes of the debtor and can only assert those causes of action possessed by the debtor.
[Conversely,] the trustee is, of course, subject to the same defenses as could have been asserted
by the defendant had the action been instituted by the debtor.").  *See also* 3 COLLIER ON
BANKRUPTCY ¶ 323.03[2] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2008) ("A
trustee is empowered to commence actions on behalf of the estate. . . . The trustee is, of course,
subject to the same defenses as could have been asserted by the defendant had the action been
instituted by the debtor.").

    [12] The real defenses include infancy of the obligor, duress, and fraud in inducement.  *See*
N.J. STAT. ANN. § 12A:3-305(a)(1) (West 2008).

    [13] The personal defenses include any other defense in the UCC or contract law.  *See id.* §
12A:3-305(a)(2).

elements of . . .  knowledge of the falsity and an intention to obtain an undue advantage

therefrom . . . are not essential if [the party] seeks to prove that a misrepresentation constituted

only equitable fraud." *Jewish Ctr. of Sussex County*, 432 A.2d at 524.

Dr. Stefanelli alleges several instances of fraud or misrepresentation by Dr. La Russo.

First, the contract between Dr. La Russo and Dr. Stefanelli states that Dr. La Russo's practice

had not been know by any other name in the prior three years; Dr. Stefanelli claims the practice

was known by another name and that this was a material misrepresentation.  Second, Dr. La

Russo told Dr. Stefanelli the practice had a certain income level; however, Dr. Stefanelli alleges

portions of the income were from the use of illegal runners and this was not disclosed.  Finally,

Dr. Stefanelli claims Dr. La Russo failed to disclose the practice was under investigation for

insurance fraud.

(a)      Prior Name of Practice

As to Dr. Stefanelli's allegation regarding the name of the practice, Dr. La Russo

admitted on cross-examination that in 2002 he changed the name of his practice from Academy

Chiropractic Center, Inc. to Rehabilitation Therapy Corp.  Dr. La Russo indicated the reason for

this name change was the State Farm investigation.  Dr. La Russo also admitted he did not

disclose this name change to Dr. Stefanelli.  Therefore, at the time of the sale of the practice in

2003, Dr. La Russo was in violation of the contractual provision that indicated that he

"represent[ed] and warrant[ed] that he ha[d] not used any other business names and addresses

within the 3 years last past . . . ."

While Dr. La Russo may have made a misrepresentation to Dr. Stefanelli by failing to

disclose this information, proof of fraud requires a showing that a *material* misrepresentation

was made.  *Weil*, 824 A.2d at 182.  "A misrepresentation is material if it would be likely to

15

induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce the recipient to do so."  RESTATEMENT (SECOND) OF CONTRACTS § 162(2) (1981).

Dr. Stefanelli has not met her burden.  No evidence was presented to prove Dr. Stefanelli engaged in any independent due diligence to determine if another name had been used. Additionally, Dr. Stefanelli gave the court no reason to believe she would have acted differently with regard to the transaction or would have investigated the name change and learned of the State Farm allegations had Dr. La Russo disclosed this information.

While it is true that " '[s]ilence, in the face of a duty to disclose, may be a fraudulent concealment[,]' " *N.J. Econ. Dev. Auth. v. Pavonia Rest., Inc.*, 725 A.2d 1133, 1139 (N.J. Super. Ct. App. Div. 1998), such an omission must be material to constitute fraud.  "[T]he concealed facts 'must be facts which if known . . . would have prevented [the obligor] from obligating himself, or which materially increase his responsibility.' " *Id.* (quoting *Ramapo Bank v. Bechtel*, 539 A.2d 1276, 1279 (N.J. Super. Ct. App. Div. 1988)).  Since Dr. Stefanelli failed to show that she would have acted differently or been in a better position had this information been disclosed, the court finds this misrepresentation was not material.

Additional support for this finding comes from the fact that the name of the practice was not specifically mentioned or included in the contract for sale.  By not specifically purchasing the name of the practice, it appears the name was not a material part of the sale.  Therefore, Dr. Stefanelli has not proven that Dr. La Russo committed fraud with regard to the name of the practice.

(b)    Runners

The allegation regarding Dr. La Russo's failure to disclose that part of the practice's income was derived from illegal runners is fraught with evidentiary problems.  Since Dr.

16

Stefanelli failed to offer any admissible evidence regarding Dr. La Russo's use of runners, Dr. Stefanelli has not met the elements of fraud.

(c)    Insurance Fraud Investigation

Dr. Stefanelli argues that Dr. La Russo failed to disclose that he was under investigation for insurance fraud at the time he signed the contract to sell his practice. The testimony about what was disclosed is somewhat in conflict. Dr. Stefanelli says Dr. La Russo told her that State Farm had delayed paying some claims due to billing issues. To her this was unremarkable. In her experience, occasionally insurance claims might be delayed for a variety of reasons. She says Dr. La Russo never informed her he was being investigated for insurance fraud. Dr. La Russo testified that he made Dr. Stefanelli fully aware of the situation with State Farm, but at the time of the contract he was not aware that the nature of the investigation was fraud.

Dr. La Russo's testimony about his lack of knowledge is difficult to reconcile with his testimony regarding his change of name from Academy Chiropractic to Rehabilitation Therapy. Dr. La Russo explained that he was prompted to change the name of the practice due to the investigation by State Farm. Dr. La Russo said that he wanted to create a new company in order to distinguish the files involved in the State Farm investigation from the files that he was going to continue forward with in his practice. Dr. La Russo's other justification was that he simply wanted to change the name.

Looking at the facts presented in their entirety, the court concludes that Dr. La Russo knew at the time of contracting that he was under investigation for fraud. First, Dr. La Russo was vague about his reason for changing the name of the practice but clearly the impetus for the change was the State Farm investigation. Second, Dr. La Russo testified that he met with a State Farm investigator two years prior to the sale of the practice, and this meeting prompted him to

17

retain counsel.  Finally, the sale of the practice was in May 2003, and the state court complaint

was filed in September 2003.  Thus, the fraud charges were looming at the time of the sale.

The court finds Dr. La Russo had a duty to disclose that he was under investigation for

fraud.  "Silence, in the face of a duty to disclose, may be a fraudulent concealment."  *Berman v.*

*Gurwicz*, 458 A.2d 1311, 1313 (N.J. Super. Ct. Ch. Div. 1981).  "Partial disclosure may [also]

amount to fraud."  *Id.*  "[W]hether a duty to disclose exists is a matter of law."  *United Jersey*

*Bank v. Kensey*, 704 A.2d 38, 43 (N.J. Super. Ct. App. Div. 1997).  Three general classes of

transactions give rise to a duty to disclosed.  *Berman*, 458 A.2d at 1313.  The relevant class here

is the one that "embraces situations in which 'either one or each of the parties, in entering . . .

[the] transaction, expressly reposes . . . a trust and confidence in the other . . . or [because of the]

circumstances of the case, the nature of the dealings, or their position towards each other, such a

trust and confidence . . . is necessarily implied.' "  *United Jersey Bank*, 704 A.2d at 44 (quoting

*Berman*, 458 A.2d at 1313-14).

In this case, Dr. Stefanelli purchased Dr. La Russo's practice as a going concern based on

the history of generated revenues.  Dr. Stefanelli relied on Dr. La Russo to supply her with full

and accurate information regarding these revenues.  Dr. La Russo's superior knowledge, coupled

with the contract, required him to disclose this information because Dr. Stefanelli placed her

trust and confidence in him.  Dr. La Russo supplied her with some information, but he failed to

disclose all of the material facts.  Dr. La Russo was aware of the State Farm investigation and

while he mentioned to Dr. Stefanelli billing issues with State Farm had arisen, he failed to

disclose to her a fraud investigation was under way.  This partial disclosure makes it clear that he

recognized his duty to disclose but failed to meet it.  Furthermore, even if Dr. La Russo did not

know the specific charges against him, the facts, specifically Dr. La Russo's retention of counsel,

lead to the conclusion that he knew he was under investigation for something serious, if not

fraud.  He was also under a duty to disclose this.  Thus, Dr. La Russo's failure to disclose would

be fraud if Dr. Stefanelli could prove damages.

      2.    *Damages*

Assuming, *arguendo*, the first four elements of fraud were proven as to any or all of Dr.

Stefanelli's allegations, she still has failed to establish a defense of fraud because no damages

have been established.  Damages are a required element to prove common law fraud, and the

party asserting the fraud bears the burden to prove damages.  *See Britton v. Supreme Council,*

*R.A.*, 18 A. 675, 678 (N.J. Ch. 1889) ("A falsehood or fraud that does not result in legal injury

can neither be made the foundation of an action nor the ground of a defense.").[14]

Dr. Stefanelli could seek monetary damages to set off against the balance due on the note.

"Generally, when a contract is obtained by fraud, the injured party may rescind or affirm, and if

he affirms he is entitled to retain or recover the consideration under the agreement as well as

money damages for deceit."[15]  *Baldasarre v. Butler*, 604 A.2d 112, 123 (N.J. Super. Ct. App.

Div. 1992), *overruled on other grounds* by *Baldasarre v. Butler*, 625 A.2d 458 (N.J. 1993).  The

calculation as to the amount of damages to be awarded if such a breach is found is not an exact

---

[14] *But see Albright v. Burns*, 503 A.2d 386, 391 (N.J. Super. Ct. App. Div. 1986) ("Where
fraud is found, damages may be presumed."); *Jewish Ctr. of Sussex County v. Whale*, 397 A.2d
712, 715 (N.J. Super. Ct. Ch. Div. 1978) ("However, our courts have held that the very existence
of a fraudulently procured document causes damage, so that where fraud is found damage may
be presumed.").

[15] *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 477 A.2d 1224, 1232 (N.J. 1984)
("The majority rule of law [regarding legal fraud] is that actual loss or injury and compensatory
damages are necessary to maintain a cause of action for legal fraud and that, in the absence of an
award of compensatory damages, a cause of action has not been made out and nominal and
punitive damages may not lie.").

science.  The focus of any such calculation must be "making the injured party whole."[16]  *Id.*

New Jersey courts have held that such proof " 'need not be done with exactitude . . . .' "

*Totaro, Duffy, Cannova & Co., L.L.C. v. Lane, Middleton & Co., L.L.C.*, 921 A.2d 1100, 1108

(N.J. 2007) (quoting *Lane v. Oil Delivery, Inc.*, 524 A.2d 405, 409 (N.J. Super. Ct. App. Div.

1987)).  The degree to which damages must be proved will vary by case and "mere uncertainty

as to the quantum of damages [will be] an insufficient basis on which to deny the non-breaching

party relief."  *Id.*

However, this standard is not without limits.  Regardless of the case, it is necessary for

the party asserting fraud to show that some type of compensable injury occurred as a result of the

fraud.[17]  In this case, Dr. Stefanelli failed to do so.  Dr. Stefanelli presented no evidence of any

significance upon which the court could value her claim.

As to Dr. La Russo's failure to disclose the ongoing State Farm investigation to Dr.

Stefanelli, Dr. Stefanelli again failed to show what impact this had on her practice.  The most

information provided to the court was that Dr. Stefanelli has not yet received approximately

---

[16] *See also Totaro, Duffy, Cannova & Co., L.L.C. v. Lane, Middleton & Co., L.L.C.*, 921
A.2d 1100, 1108 (N.J. 2007) (quoting *Donovan v. Bachstadt*, 453 A.2d 160, 165 (N.J. 1982))
("We recognize that the goal is 'to put the injured party in as good a position as . . . if
performance had been rendered.' ").

[17] The most recent authority in New Jersey on this subject is *Make-Up Bar, Inc. v.
Cooper, Levenson, April, Niedelman & Wagenheim, P.A.*, No. A-5189-06T1 (N.J. Super. Ct.
App. Div. May 21, 2008), *available at* http://lawlibrary.rutgers.edu/courts/appellate/a5189
-06.opn.html.  In this case, dealing with the requirements for establishing lost profits as damages,
the court explained that:

> "[l]ose of profits, where based on sound fact and not on mere opinion
> evidence without factual support, is recognized as a proper measure of
> damages if capable of being estimated with a reasonable degree of
> certainty."

*Id.* at 7 (quoting *Stanley Co. of Am. v. Hercules Powder Co.*, 108 A.2d 616, 626 (N.J. 1954))
(internal citations omitted).

$15,000 because of State Farm's withholding payment.  Nothing was presented to show how this

cause – Dr. La Russo's failure to disclose – significantly impacted Dr. Stefanelli's payments

from State Farm.  According to her testimony, she performed valid treatment for patients insured

by State Farm and submitted valid claims to State Farm.  There appears to be no reason why she

should not be paid by State Farm.

3.   *Rescission*

Dr. Stefanelli argues that she is entitled to rescind the contract based on the fraud

committed by Dr. La Russo.  "Rescission is an available remedy in an action for equitable

fraud." *Baldasarre*, 604 A.2d at 122.  Rescission undoes the transaction between the parties

thereby      " 'return[ing] the parties . . . to the very ground upon which they originally stood.' "

*Id.* at 123 (quoting *Driscoll v. Burlington-Bristol Bridge Co.*, 99 A.2d 829, 831 (N.J. Super. Ct.

App. Div. 1953)).  By returning the parties to their original positions, rescission " 'prevent[s] the

party who is responsible for the misrepresentation from gaining a benefit.' "  *Id.* (quoting

*Bonnco Petrol, Inc. v. Epstein*, 560 A.2d 655, 662 (N.J. 1989)).

"As a general rule, rescission 'must be exercised in toto and is applied to the contract in

its entirety with the result that what has been done is wholly undone and no contract provisions

remain in force to bind either of the parties.' "  *County of Morris v. Fauver*, 707 A.2d 958, 966

(N.J. 1998) (quoting *M.J. Merickel v. Erickson Stores Corp.*, 95 N.W.2d 303, 306 (Minn. 1959)).

When such a result is not possible, rescission is not an available remedy.  *See Baldasarre*, 604

A.2d at 123.

In arguing that rescission is warranted, Dr. Stefanelli relies on the New Jersey Supreme

Court case, *Jewish Center of Sussex County v. Whale*, 432 A.2d 521 (N.J. 1981).  In discussing

proof of damages for an equitable fraud cause of action, the court concluded that "[a]ctual loss in

21

the financial sense is not required . . . ." *Id.* at 525. The rationale being that "equity looks not to the loss suffered by the victim but rather to the unfairness of allowing the perpetrator to retain a benefit unjustly conferred." *Id.*

What Dr. Stefanelli fails to take into account is that rescission may not be appropriate in this case. Rescission is not an appropriate remedy for fraud if its application would be impractical. The court believes rescission is inappropriate here.

The contract between the parties was executed in April 2003, and Dr. Stefanelli stopped making payments to Dr. La Russo in January 2004. The practice has been inoperative since the beginning of 2004, and no effort has been made by Dr. Stefanelli to return equipment, files, or any other part of the practice to Dr. La Russo. Given the time that has passed and the present position of the parties, the rescission of the contract could not be "in toto" and would not put the parties back in their pre-contract positions.[18]

Dr. Stefanelli failed to establish her right to either compensatory damages or rescission; therefore, Dr. Stefanelli has no remedy for any possible fraud that occurred.

## **CONCLUSION**

The Trustee in this case seeks to have Dr. Stefanelli pay the balance due on a note payable to the Debtor, Dr. La Russo. Dr. Stefanelli argues her contract with Dr. La Russo was based on fraud and misrepresentations that excuse her from further performance on the note. The court finds that while Dr. La Russo's failure to inform Dr. Stefanelli about the State Farm fraud investigation is a material misrepresentation, Dr. Stefanelli failed to establish damages. The remedy of rescission sought by Dr. Stefanelli is inappropriate in this case, and Dr. Stefanelli

---

[18] Had this been a case where equitable fraud was proved and the contract was totally executory, rescission may have been an appropriate remedy.

22

did not present any evidence or method for the court to quantify damages due to her.  Therefore,

the Trustee is entitled to judgment against Dr. Stefanelli for the $47,000 balance due on the note

plus interest from the date the Trustee demanded payment, September 6, 2005.


Dated: June 20, 2008                                **/S/Raymond T. Lyons**
                                                     United States Bankruptcy Judge